UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DAHIR NOR IBRAHIM,

      Plaintiff,

v.

HEATHER WEYKER, *in her individual capacity as a St. Paul Police Officer*; JOHN BANDEMER, *in his individual and official capacities as a St. Paul Police Sergeant*; JOHN DOES 3-4, *in their individual and official capacities as supervisory members of the St. Paul Police Department*; *and* THE CITY OF ST. PAUL,

      Defendants.

Case No. 16cv1865 (JNE/TNL)
ORDER

## I.    INTRODUCTION

Plaintiff Dahir Nor Ibrahim alleges violations of his constitutional rights in an investigation that led to his indictment by a federal grand jury and subsequent arrest, his trial on two of the counts in which he was charged, and his acquittal by a jury on those two counts. He sues Defendants Heather Weyker, a police officer for the St. Paul Police Department in Minnesota; John Bandemer, a St. Paul Police Department sergeant who is alleged to have been Weyker's supervisor; John Does 3-4, who are allegedly supervisory St. Paul police officers; and the City of St. Paul ("St. Paul"). Weyker and Bandemer move to dismiss Ibrahim's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on absolute and qualified immunity grounds. Dkt. No. 39. St. Paul moves on behalf of the City of St. Paul and John Does 3-4 for judgment on the pleadings pursuant to Rule 12(c). Dkt. No. 45.

The investigation at the core of Ibrahim's civil complaint targeted a suspected venture involving the sex-trafficking of minor girls across Minnesota, Tennessee, and Ohio. The

investigation resulted in the criminal indictment of thirty people, mostly Somali, in the Middle District of Tennessee in 2010-2011 ("Tennessee Case"). Ibrahim alleges that Weyker and Bandemer fabricated evidence about him and others throughout the investigation, resulting in a tainted indictment that was further corrupted by Weyker's continuing deception, and causing his arrest and detention without probable cause.

Nineteen of his co-defendants in the Tennessee Case bring separate suits similarly alleging constitutional violations, and a twenty-first person brings another related civil suit. The parties agreed to coordinated briefing on the Defendants' motions. The Court assumes familiarity with its fuller opinion in one of the related cases, *Osman v. Weyker, et al.*, No. 16cv908 ("Osman Opinion") (filed simultaneously herewith), and will not repeat that opinion's discussion verbatim here. Ibrahim, coordinating with the other plaintiffs represented by the same counsel, opposed the motions. *See* GBBS Pls.' Opp. to St. Paul Mot., Dkt. No. 51; GBBS Pls.' Opp. to DOJ Mot. to Dismiss, Dkt. No. 54.

The Court held a hearing on Defendants' motions on May 3, 2017, and now grants both motions.[1]

## II. APPLICABLE STANDARDS

A motion to dismiss or a motion for judgment on the pleadings is appropriately granted "only when there is no dispute as to any material facts and the moving party is entitled to judgment as a [m]atter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation omitted). To survive a Rule 12 motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[1] The United States also filed a Motion to Substitute and Dismiss, which was mooted by stipulation as recognized by the April 12, 2017 Order Permitting the GBBS Plaintiffs to Amend Complaints. Dkt. No. 61. Pursuant to that order, Ibrahim filed an Amended Complaint [Dkt. No. 62] ("AC"), which is thus the operative complaint subject to these Rule 12 motions.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Haney v. Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016), *as amended* (Dec. 27, 2016). *See also* Osman Op. 3-4.

### III.  ALLEGATIONS

Most of the allegations are similar to those alleged by Osman and summarized and analyzed in the Court's order in that case. *See, e.g.*, Osman Op. 4-8. The Court briefly recounts some allegations in Ibrahim's Amended Complaint and some facts gleaned from the Tennessee Case record.[2]

On November 8, 2010, after a First Superseding Indictment ("FSI") was filed in the Tennessee Case dated November 3, 2010, Ibrahim was arrested. AC ¶¶ 12, 16. He was held in custody until May 2012. AC ¶¶ 12, 53. At a detention hearing on December 14, 2010, a magistrate judge found by clear and convincing evidence that there was a serious risk Ibrahim would not appear because, in part, he had international family members and owned property in Kenya and because of "his recent access to large amounts of cash, presently unaccounted for." *United States v. Ibrahim*, No. 3:10cr260, Dkt. No. 359, at 2 (M.D. Tenn. Dec. 14, 2010).

The indictment charged Ibrahim with two counts of conspiracy to sex traffic a minor under 18 U.S.C. § 1594 (Counts 1 and 2) and one count of making a material false statement in violation of 18 U.S.C. § 1425(a) (Count 24). AC ¶ 16; FSI, *United States v. Ibrahim*, No. 3:10cr260, Dkt. No. 36 (M.D. Tenn. Nov. 3, 2010). In May 2011, a Second Superseding Indictment was filed that charged Ibrahim in the same three counts. AC ¶ 17.

The sex-trafficking-related charges as to Ibrahim did not specify his involvement with any particular victims. *See* AC ¶ 20. "Prior to trial, Jane Doe Five became the centerpiece of

---

[2] The Court may take judicial notice of public documents in the Tennessee Case record. *Greenman*, 787 F.3d at 887.

3

Weyker's and Bandemer's fabricated case against Ibrahim . . . ." AC ¶ 22. Weyker was the lead investigator on the case, and Bandemer was her supervisor in the St. Paul Police Department. AC ¶ 15.

On February 16, 2012, the district court granted a motion to sever multiple counts, including Count 24, from the upcoming trial. *United States v. Ibrahim*, No. 3:10cr260, Dkt. No. 1395 (M.D. Tenn. Feb. 16, 2012); SAC ¶ 19. Count 24 "was later dismissed." SAC ¶ 19.

Ibrahim went to trial on Counts 1 and 2 in Spring 2012. AC ¶ 18. "At trial, Jane Doe Five testified that 'in 2000 [Ibrahim] traveled to Minnesota from Nashville looking for girls to take back to Nashville and asked Jane Doe [Five] if she wanted to travel to Nashville for prostitution.'" AC ¶ 24 (quoting *United States v. Adan*, 913 F. Supp. 2d 555, 572 (M.D. Tenn. 2012)). "There was never any such conspiracy and Ibrahim never engaged in any attempt to have Jane Doe Five engage in commercial sex." AC ¶ 25. "Fabricated evidence formed the basis of this false allegation against Ibrahim." *Id.* Weyker and the other defendants "concoct[ed] stories for putative victims like Jane Doe Five and coach[ed] them to testify—albeit unbelievably and inconsistently—in support of the Indictment." AC ¶ 35. Ibrahim "had no material involvement with Jane Doe Five." AC ¶ 26.

"Ibrahim was acquitted of conspiracy as to child sex trafficking by the jury as '[t]he Government did not prove that Ibrahim ever actually secured and transported any minor girls from Minneapolis to Nashville nor any proof of the ages of any girls.'" AC ¶ 27 (quoting *Adan*, 913 F. Supp. 2d at 572). The jury's acquittals of Ibrahim and five other defendants in the trial "indicate[] that the jury . . . rejected all of the charges supported by Jane Doe 5's testimony.'" AC ¶ 38 (quoting *United States v. Fahra*, 643 Fed. Appx. 480, 489 (6th Cir. 2016)).

4

The jury convicted three other defendants on some counts but acquitted them on others. *Adan*, 913 F. Supp. 2d at 560. After the trial, the district court granted these defendants' Federal Rule of Criminal Procedure 29 motions for judgments of acquittal on the basis of a variance, and the government appealed that order. *See id.* at 579. On March 2, 2016, the Sixth Circuit affirmed the district court's grant of the Rule 29 motions. *Fahra*, 643 Fed. Appx. at 481.

In May 2012, Ibrahim was released on conditions. *See* AC ¶ 12; *United States v. Ibrahim*, 3:10cr260, Dkt. No. 2484 (M.D. Tenn. May 4, 2012).

After that trial, in August 2012, a Third Superseding Indictment was filed. That indictment reasserted Count 24 against Ibrahim but did not charge him in any other counts. *United States v. Ibrahim*, 3:10cr260, Dkt. No. 2701 (M.D. Tenn. Aug. 22, 2012). He was to stand trial on Count 24 with other defendants in October 2013 and moved to sever. *See id.*, Dkt. No. 3147 (M.D. Tenn. May 6, 2013). The trial was continued pending an appellate ruling. *See id.*, Dkt. No. 3497 (M.D. Tenn. Oct. 22, 2013).

After the Sixth Circuit issued the opinion affirming the grant of the Rule 29 motions, the government moved to dismiss all remaining counts against all remaining defendants, and the district court granted the motion. *See United States v. Adan*, No. 3:10cr260, Dkt. Nos. 3796 & 3798 (M.D. Tenn. Mar. 8 & Mar. 10, 2016).

Like Osman, Ibrahim alleges that the charges of a wide-ranging sex-trafficking conspiracy were baseless and that Weyker fabricated "the overwhelming majority of material evidence supporting his indictment," AC ¶ 33; that Weyker manipulated and coerced Jane Doe witnesses, including Jane Doe Five, into lying, *e.g.*, AC ¶¶ 30, 32, 35; that Weyker was motivated to falsify evidence by a desire for professional success, *see* AC ¶ 15; and that indications of Weyker's fabrication included her rough notes, AC ¶ 43. Also like Osman,

5

Ibrahim's complaint repeatedly cites to remarks about Weyker and the case by the district and appellate courts in the Tennessee Case. AC ¶¶ 23, 24, 27-29, 34 n.1, 45.

## IV. SUMMARY OF ARGUMENTS

A summary of the parties' arguments is included in Section IV of the Court's simultaneously filed opinion in *Yusuf v. Weyker, et al.*, No. 16cv1012. Ibrahim is represented by the same counsel as Yusuf.

## V. LEGAL ANALYSIS

As explained fully in the Osman Opinion, pursuant to *Manuel v. City of Joliet*, 137 S. Ct. 911 (Mar. 21, 2017), Ibrahim's claims sound, if at all, in the Fourth Amendment, not the Fifth or Fourteenth. *See* Osman Op. 11-13; *see also id.* at 17-22. His complaint is that "[b]ut for the testimony and other erroneous evidence falsely manufactured by Weyker and Bandemer, no probable cause existed to detain or otherwise restrict Ibrahim's liberty." AC ¶ 1; *see also* AC ¶ 41. In other words, he complains "that a form of legal process resulted in pretrial detention unsupported by probable cause." *Manuel*, 137 S. Ct. at 919. So "the right allegedly infringed lies in the Fourth Amendment." *Id.* A "constitutional division of labor" applies to claims similar to Ibrahim's. *Id.* at 920 n.8 (referring to *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *Albright v. Oliver*, 510 U.S. 266 (1994)). Thus, because he challenges his pretrial detention, his claim is under the Fourth Amendment. In contrast, if he had been convicted and were to challenge the sufficiency of the evidence supporting that conviction, his claim would then be analyzed under the Due Process Clause of the Fourteenth Amendment because "once a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support *both a conviction and any ensuing incarceration* does so under the Due Process Clause . . . ." *Id.* (emphasis added) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979), and *Thompson v.*

*Louisville*, 362 U.S. 199, 204 (1960)). Although Ibrahim did stand trial on two counts, he was acquitted by the jury. He then remained on pretrial detention conditions as he awaited trial on Count 24. He thus challenges pretrial detention, not incarceration or supervision imposed pursuant to a sentence, and his claims still are under the Fourth Amendment. *Compare with Jackson*, 443 U.S. at 316 (describing the due process guarantee "that no person shall be made to *suffer the onus of a criminal conviction* except upon sufficient proof") (emphasis added), *and Thompson*, 362 U.S. at 206 (holding that it violates due process "to convict and punish a man without evidence of his guilt"). His claims for substantive due process violations under the Fifth or Fourteenth Amendments therefore fail. *See Manuel*, 137 S. Ct. at 919-20; *Albright*, 510 U.S. at 271 (plurality opinion).[3]

Under the Fourth Amendment analysis, the Court must decide whether Ibrahim plausibly alleges that the Defendants violated his right to be free from unreasonable seizure by arresting and detaining him without arguable probable cause, based on fabricated evidence.[4]

To evaluate whether a person's Fourth Amendment right has been violated by an arrest pursuant to a warrant that lacked probable cause, the court applies the analysis set out in *Franks v. Delaware*, 438 U.S. 154 (1978). *See Hawkins v. Gage Cty.*, 759 F.3d 951, 958-59 (8th Cir. 2014); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101, 105 (1st Cir. 2013). Thus, the court considers whether there were deliberately or recklessly false statements made in support of a finding of probable cause and whether those statements were necessary to the finding of probable

---

[3] As explained in a footnote in the Court's simultaneously filed order in *Yusuf v. Weyker, et al.*, No. 16cv1012, the attempt to distinguish *Albright* in his opposition papers, which were filed without the benefit of the *Manuel* decision, is not persuasive in light of the *Manuel* Court's clear interpretation of *Albright*. *See Manuel*, 137 S. Ct. at 918.

[4] Because § 1983 and *Bivens* claims are analyzed similarly, the Court does not reach the question of whether Ibrahim's claim should have been brought under § 1983 or *Bivens*. *See* Osman Op. 13-17.

7

cause. *See Franks*, 438 U.S. at 156; *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014). The court also considers whether material information was omitted with the intent to mislead or with reckless disregard as to whether the omission was misleading. *See Williams*, 772 F.3d at 1312; *Hawkins*, 759 F.3d at 959. If, setting aside the false statements (or adding in the omitted information), there was no probable cause to arrest, then the arrest violated the Fourth Amendment. *See Williams*, 772 F.3d at 1312-13; *Hawkins*, 759 F.3d at 958-59; *Hernandez-Cuevas*, 723 F.3d at 105. Probable cause "exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015) (citation omitted).

Where a plaintiff alleges that she was arrested without probable cause and the defendant asserts the qualified immunity defense, courts ask whether there was "*arguable* probable cause to arrest." *Stewart v. Wagner*, 836 F.3d 978, 984 (8th Cir. 2016) (citing *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)) (applying this standard to a Fourth Amendment claim for detention based on allegedly false and incomplete information in a probable cause statement). "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *New*, 787 F.3d at 899. "It is clearly established that the Fourth Amendment requires a *truthful factual showing* sufficient to constitute probable cause before an arrest warrant can issue." *Peterson v. City of Plymouth*, 60 F.3d 469, 477 (8th Cir. 1995) (emphasis added) (quoting *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994)).

### a. Analysis of Ibrahim's Claim Under the Fourth Amendment

In considering whether Ibrahim plausibly alleges a Fourth Amendment violation, the

Court disregards mere conclusory statements, focuses on well-pleaded factual allegations and accepts them as true, and applies its judicial experience and common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Court also properly considers the Tennessee Case court record in assessing the pleadings. *See, e.g.*, *Greenman*, 787 F.3d at 887.

Ibrahim's core allegations are very similar to Osman's, including the ample citations to comments by the Tennessee Case district court and the related appellate decision in *Fahra*, 643 Fed. Appx. 480 (6th Cir. 2016). In the Osman Opinion, the Court examines several orders and memoranda by the district court and two separate Sixth Circuit Court of Appeals opinions concerning the Tennessee Case, some of which both Osman and Ibrahim cite. *See* Osman Op. 25-33. In Osman's case, the Court found that some of these statements by judicial officers are remarkable, and that taken all together along with other well-pleaded facts, they nudge Osman's Fourth Amendment claim as to Weyker over the *Iqbal* plausibility line. The Court notes that none of these judicial statements refer even obliquely to Bandemer. The Court further found that the fact that Osman was also indicted on charges of obstruction of justice relating to the prosecution of the allegedly fabricated sex-trafficking-conspiracy case does not *per se* doom her Fourth Amendment claim. *See* Osman Op. 35-37. Ibrahim's case, however, is different.

Weyker and Bandemer argue that even if Ibrahim plausibly alleges that Weyker fabricated evidence material to the indictment for sex-trafficking-related charges, the fact that he was also indicted in a non-trafficking-related charge defeats his Fourth Amendment claim. Weyker and Bandemer argue that he fails to plausibly allege that there was not probable cause to arrest him on Count 24. *See* DOJ Br. 65-68; DOJ Reply 31 n.12. They point out in their reply papers that the plaintiffs represented by Ibrahim's counsel fail to address this argument at all. DOJ Reply 31-32.

Ibrahim's complaint does not allege that there was no probable cause to indict him on Count 24.  Count 24 identified particular statements that Ibrahim was alleged to have made falsely in an N400 Application for Naturalization, including that he had no children, even though he had a child at the time he signed the application.  *See* FSI 55-56.  The grand jury's indictment of him in that charge "conclusively determines the existence of probable cause" on that count, *Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) (citation omitted), at least absent any plausible allegations that the indictment in that count was tainted by any fabrication of evidence.  His more general, conclusory allegations—*e.g.*, that he would never have been detained absent fabricated evidence, AC ¶ 41—cannot overcome the hurdle posed by his indictment in this count.  The Court also notes the care with which Ibrahim alleges he "would never have been indicted *on sex trafficking charges* had Weyker and Bandemer not fabricated evidence . . . ."  AC ¶ 40 (emphasis added).  Finally, the Court cannot reasonably conclude from the government's eventual dismissal of all charges against all remaining defendants—after an adverse appellate decision affirming the grant of Rule 29 motions on the basis of a variance—that there was no probable cause to indict Ibrahim on any counts at all.

Therefore, Ibrahim's complaint must fail.  Even if there were no probable cause to arrest him for the sex-trafficking-related charges, there is no Fourth Amendment violation where there is probable cause to arrest "for the violation of some other law."  *Greenman*, 787 F.3d at 889 (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (holding that there is no Fourth Amendment violation if there is probable cause to arrest based on any criminal offense, even if the officer's subjective reason for arresting was a different and unrelated offense); *Keil v. Triveline*, 661 F.3d 981, 986 (8th Cir. 2011).  He therefore "has failed to 'make

out a violation of a constitutional right' in the first instance." *Greenman*, 787 F.3d at 888; *see also Keil*, 661 F.3d at 986.

Defendants Weyker and Bandemer are entitled to qualified immunity. Ibrahim has failed to plausibly allege a constitutional violation. Moreover, as to Bandemer, there are no well-pleaded facts that would support an inference that he directly fabricated evidence.

### b. Supervisory Liability

Ibrahim also sues Bandemer and John Does 3-4 in their individual capacities as supervisors. He alleges that they were deliberately indifferent to or authorized Weyker's alleged violations of his constitutional rights. AC ¶ 69.

A supervisor sued in his or her individual capacity in a § 1983 or *Bivens* suit "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340 (citing *Livers*, 700 F.3d at 355). "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *Id.* The notice prong requires that "[t]o impose supervisory liability, other misconduct [allegedly giving the supervisor notice] must be very similar to the conduct giving rise to liability." *Id.* (quoting *Livers*, 700 F.3d at 356).

First, given the Court's conclusion that Ibrahim has not adequately alleged a constitutional violation by Weyker or Bandemer, the supervisory liability claims "automatically

11

fail for lack of an underlying constitutional violation." *Mendoza v. U.S. Immig'n & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017) (citation omitted).

Moreover, Ibrahim's complaint, which is very similar to Osman's complaint as to the supervisory liability allegations, likewise contains few allegations—and fewer well-pleaded facts—regarding supervisory liability. Like Osman, he alleges that Bandemer and the John Does had supervisory responsibility over Weyker, *see, e.g.*, AC ¶ 67; that the investigation was very important to the St. Paul Police Department vice unit, AC ¶ 15; and that "[b]y at least February 15, 2012, these [supervisory] defendants had actual knowledge" of Weyker's fabrications based on a February 2012 memorandum-order at Dkt. No. 1392 and other district court orders, AC ¶¶ 44-45, 47. Like Osman, Ibrahim cites *United States v. Mohamud*, No. 3:10cr260, 2013 WL 1935506, at *11 n. 6 (M.D. Tenn. May 9, 2013), and *United States v. Adan*, 913 F. Supp. 2d 555, 589 n.10 (M.D. Tenn. Dec. 19, 2012), in support of his supervisory liability notice allegations. AC ¶¶ 44-45.

As explained in the Osman Opinion, these allegations do not sufficiently plead supervisory liability based on notice. *See* Osman Op. 37-41. Nor do they establish a pattern of unconstitutional acts by Weyker. Ignoring conclusory or unsupported allegations, Ibrahim does not allege any other similar acts by Weyker or Bandemer before the Tennessee Case investigation that could show a pattern about which Bandemer (as Weyker's supervisor) or the John Does (as Weyker's and/or Bandemer's supervisors) personally knew.

The allegations fail to state a claim for supervisory liability, and Bandemer and John Does 3-4 are entitled to qualified immunity as to these counts.

   c. **Municipal Liability**

Ibrahim sues St. Paul as well as Bandemer and the John Does in their official capacities for municipal liability under *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead," a municipality is liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.*

A plaintiff therefore must show that there is an "official" policy or a "custom or usage with the force of law." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). A plaintiff must plead "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citation omitted). "Misconduct among a municipality's employees must be 'continuing, widespread, [and] persistent' to establish such a custom." *Kelly*, 813 F.3d at 1075 (citation omitted). Also, "the municipality will not be liable unless policymaking officials exhibit '[d]eliberate indifference to or tacit authorization of such conduct . . . after notice to the officials of that misconduct.'" *Id.* at 1075-76 (citation omitted). The question is whether a "governmental policy or custom was the 'moving force' that led to the deprivation of [the plaintiff's] constitutional rights." *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002). Even if no individual employee is found liable, a municipality might be liable, but only where "the combined actions of multiple officials or employees may give rise to a constitutional violation." *Id.*

Ibrahim does not adequately support his conclusory municipal liability allegations. He does not allege with well-pleaded facts that Weyker or other St. Paul Police Department employees fabricated evidence in other investigations, nor that policymaking officials in the

13

department were aware of any previous incidents of fabrication of evidence. He does not allege well-pleaded facts to support a theory that multiple St. Paul Police Department members—not even Weyker and Bandemer—combined to violate his rights. Nor does he allege facts that would demonstrate an official department *policy* that moved officers to fabricate evidence or coerce witnesses and mislead prosecutors and grand juries to secure indictments. He also does not plausibly allege any such *custom* because, among other reasons, he has not adequately alleged notice, as explained above. The supervisory defendants sued in their official capacities, and the City of St. Paul, are entitled to qualified immunity on these claims.

## VI. Conclusion

Defendants are entitled to qualified immunity on all counts, because Ibrahim's complaint fails to plausibly allege a violation of his constitutional rights. The Court grants the Defendants' motions and dismisses with prejudice. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060-61 (8th Cir. 2013); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Heather Weyker and John Bandemer's Motion to Dismiss [Dkt. No. 39] is GRANTED.

2. Defendant City of Saint Paul's Motion for Judgment on the Pleadings [Dkt. No. 45] is GRANTED.

3. Plaintiff Dahir Nor Ibrahim's Amended Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 9, 2017

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge